UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| FRANCISCO DIAZ GONZALEZ, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-02141-RLY-TAB |
| | ) | |
| BRISON SWEARINGEN, | ) | |
| RUSSELL HOTT, | ) | |
| PAMELA BONDI, | ) | |
| | ) | |
| Respondents. | ) | |

**ORDER GRANTING PETITION FOR HABEAS CORPUS**

Francisco Diaz Gonzalez ("Petitioner") is a noncitizen who entered the United States without inspection about 25 years ago. Dkt. 1, ¶¶ 18–19. He did not encounter any immigration officials at or near the time of his entry, and he has not applied for any status in the United States. *Id.* On October 3, 2025, Petitioner was detained by Immigration and Customs Enforcement ("ICE") agents and removal proceedings were initiated against him. *Id.*, ¶¶ 20–21. Petitioner now petitions the court for a writ of habeas corpus under 28 U.S.C. § 2241, seeking release from custody or a prompt bond hearing pursuant to 8 U.S.C. § 1226(a). *Id.* at 16–17. For the reasons explained below, the court grants the petition to the extent that, within seven days of this order, Respondents are ordered to either: (1) afford Petitioner an individualized bond hearing before an Immigration Judge ("IJ") pursuant to 8 U.S.C. § 1226(a); or (2) release Petitioner from custody, under reasonable conditions of supervision.

## I.    Background

Petitioner entered the United States without inspection in or around the year 2000. Dkt. 1, ¶¶ 18–19. Until ICE agents arrested Petitioner on October 3, 2025, he had never encountered

immigration officials or applied for any immigration status. *Id.*, ¶¶ 20–21. After arresting Petitioner on October 3, ICE agents interviewed him and issued a warrant for his arrest. Dkt. 9-1 (Record of Deportable/Inadmissible Alien). That day, DHS issued Petitioner a Notice to Appear and placed him in removal proceedings under 8 U.S.C. § 1229(a). Dkt. 9-2 at 2–5 (Notice to Appear). The Notice to Appear charges Petitioner with inadmissibility under § 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA") [8 U.S.C. § 1182(a)(6)(A)(i)] as "an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General" and § 212(a)(7)(A)(i)(I) [8 U.S.C. § 1182(a)(7)(A)(i)(l)] as an "immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa . . . " *Id.* The "arriving alien" checkbox is unmarked. *Id.* Petitioner was subsequently transferred to Clay County Jail in Brazil, Indiana, where he remains detained. *Id.* at 1.

Upon his detention, agents notified Petitioner of his right to speak to a consular officer from Mexico, the right to a hearing before an IJ, and the right to counsel. *Id.*; dkt. 9-2 at 6 (Notice of Rights and Request for Disposition). A hearing was set before an IJ on October 22, 2025, which was later rescheduled for November 17, 2025. Dkt. 9-2 at 2; dkt. 9-3. Mr. Gonzalez has not requested a bond hearing. Dkt. 9 at 3.

On October 22, 2025, Petitioner filed this writ of habeas corpus petition, arguing that Respondents are unlawfully detaining him under 8 U.S.C. § 1225(b)(2)(A). Dkt. 1. Petitioner argues that he may only be properly detained under 8 U.S.C. § 1226(a), which entitles him to an individualized bond hearing. *Id.*

## II. Discussion

Petitioner claims that his current detention violates the INA (Count I) and the Due Process Clause of the Fifth Amendment (Count II). Dkt. 1 at 14–16. In opposition, Respondents make three arguments: (1) that this court lacks jurisdiction over Petitioner's claims; (2) that Petitioner's claim is premature because Plaintiff has not exhausted his administrative remedies by requesting a bond hearing; and (3) Petitioner is lawfully detained under the INA pursuant to 8 U.S.C. § 1225(b)(2)(A). Dkt. 9.

As discussed below, the court concludes that it has jurisdiction over the habeas petition and that Petitioner's claims are not premature. The court grants the petition on the merits insofar as Petitioner seeks an order requiring that he be provided a prompt § 1226(a) bond hearing or immediate release.

## A. Jurisdiction

A federal court may issue a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Petitioner argues that this court has jurisdiction over his petition because his detention without a bond hearing violates the INA. Dkt. 10 at 3–4. Respondents, however, point to three provisions that curtail a district court's jurisdiction over habeas petitions filed by noncitizen detainees: 8 U.S.C. §§ 1252(g), 1252(b)(9), and 1252(a)(5). Dkt. 9 at 4–6. None of these provisions bar this court's jurisdiction over the instant petition.

### i. Section 1252(g)

Respondents argue that 8 U.S.C. § 1252(g) "strips all federal courts of jurisdiction over challenges to executive branch decisions to execute removal orders." *Id.* at 4. Petitioner counters

that established precedent holds that § 1252(g) has a narrow scope and that it does not bar the district court's subject matter jurisdiction over this particular petition.  Dkt. 10 at 5.

Section 1252(g) states that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." Following the Supreme Court, the Seventh Circuit determined that § 1252(g) only bars a district court's judicial review of "the three listed decisions or actions." *E.F.L. v. Prim*, 986 F.3d 959, 964 (7th Cir. 2021) ("[sec 1252(g)] does not sweep broadly; only challenges to the three listed decisions or actions—to commence proceedings, adjudicate cases, or execute removal orders—are insulated from judicial review.") (citing *Reno v. American-Arab Anti–Discrimination Comm. (AAADC)*, 525 U.S. 471, 482 (1999)). As such, § 1252(g) does not preclude this court's jurisdiction over the instant petition because the petition does not arise from the enumerated decisions or actions. Petitioner does not challenge the "commencement" of his removal proceedings. He does not challenge the "adjudication" of his case because he is not challenging anything related to the removal proceedings themselves. Last, he does not challenge the execution of his removal order—in fact, the record does not show that a removal order has even been issued.

Respondents argue that § 1252(g) precludes jurisdiction in this case because it "also bars district courts from hearing challenges to the *method* by which the Secretary of Homeland Security chooses to commence removal proceedings, including the decision to detain an alien pending removal." Dkt. 9 at 4 (emphasis added). Respondents, however, ignore Supreme Court and Seventh Circuit precedent rejecting attempts to expand § 1252(g) beyond the three enumerated decisions or activities.[1] In *Department of Homeland Security v. Regents of the University of California*, the

---

[1] In support, Respondents cite to *Alvarez v. ICE*, 818 F.3d 1194, 1203 (11th Cir. 2016), which concluded that § 1252(g) barred a district court from hearing some parts of a *Bivens* claim challenging ICE's methods

Supreme Court rejected the government's argument that § 1252(g) barred their review of an APA claim involving the recission of Deferred Action for Childhood Arrivals ("DACA") because the Court had already "rejected as 'implausible'" any claim that § 1252(g) covers "all claims arising from deportation proceedings." 591 U.S. 1, 19 (2020) (quoting *AAADC*, 525 U.S. at 482). Confronted with a habeas petition challenging the petitioner's confinement until his deportation, the Seventh Circuit held that "nothing in § 1252(g) precludes review of the decision to confine." *Carrera-Valdez v. Perryman*, 211 F.3d 1046, 1047 (7th Cir. 2000). Indeed, courts have consistently found that § 1252(g) does not bar a district court's jurisdiction over challenges to the legality of a noncitizen's detention. *Ozturk v. Hyde*, 136 F.4th 382, 397 (2d Cir. 2025) ("Section 1252(g) 'does not preclude jurisdiction over the challenges to the legality of [a noncitizen's] detention.'") (quoting *Kong v. United States*, 62 F.4th 608, 609 (1st Cir. 2023)); *Guerrero Orellana v. Moniz*, No. 25-cv-12664-PBS, 2025 WL 2809996 (D. Mass. Oct. 3, 2025) (concluding that § 1252(g) did not apply to habeas challenge of ongoing detention without a bond hearing); *Alejandro v. Olson*, No. 1:25-cv-02027-JPH-MKK, 2025 WL 2896348, at *3 (S.D. Ind. Oct. 11, 2025) (same); *Campos Leon v. Forestal*, No. 1:25-cv-01774-SEB-MJD, 2025 WL 2694763, at *2 (S.D. Ind. Sept. 22, 2025) (same). Bound by Supreme Court and Seventh Circuit precedent, § 1252(g) does not preclude this court's jurisdiction over the petition.

### ii. Sections 1252(b)(9) and 1252(a)(5)

---

of commencing removal proceedings once the plaintiff's criminal sentence ended. In contrast to Petitioner, the *Alvarez* plaintiff challenged the way that the government commenced removal proceedings—whether he entered into a stipulated removal order or had to attend removal proceedings. The *Alvarez* court reasoned that the plaintiff "essentially asked the court to find that the agency should have chosen a different method of commencing proceedings." *Id.* Even still, *Alvarez* reversed the district court's determination that 1252(g) stripped its jurisdiction over the plaintiff's claim that his detention violated the Fifth Amendment because his removal was not reasonably foreseeable. *Id.* at 1205. Heeding Supreme Court guidance to read § 1252(g) as a "narrow provision," *Alvarez* determined the district court had jurisdiction over the plaintiff's claim that ICE had no statutory grounds to detain him. *Id.* (citing *AAADC*, 525 U.S. at 482).

Section 1252(b)(9) precludes judicial review "of all questions of law . . . including interpretation and application of statutory provisions . . . arising from any action taken . . . to remove an alien from the United States." Dkt. 9 at 5.[2] Section 1252(a)(5) reserves for the courts of appeals "judicial review of an order of removal."

Respondents argue that, when read together, §§ 1252(b)(9) and 1252 (a)(5) bar this court's jurisdiction over Petitioner's petition because these provisions cover all claims "arising from" any removal-related activity. Dkt. 9 at 6. In support of this proposition, however, Respondents cite cases explaining that § 1252(a)(5) and § 1252(b)(9) do *not* apply to habeas challenges to unlawful detention not involving a final order of removal. *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1032 (9th Cir. 2016) (explaining that § 1252(b)(9) does not apply to federal habeas corpus provisions that do not involve final orders of removal, but finding that, "[i]n light of §§ 1252(b)(9) and 1252(a)(5) and our precedent, the [plaintiffs'] right-to-counsel claims must be raised through the PFR process because they 'arise from' removal proceedings"); *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011) (quoting *Kellici v. Gonzales*, 472 F.3d 416, 420 (6th Cir. 2006) for the proposition that "district court, not court of appeals, had jurisdiction where plaintiffs' habeas petitions challenged only the constitutionality of the arrest and detention, not the underlying administrative order of removal'").[3]

---

[2] Section 1252(b)(9) states, "Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact."

[3] Respondents also cite irrelevant cases involving petitioners and plaintiffs who ask district courts to review denials of applications to halt removals. *See Rosario v. Holder*, 627 F.3d 58 (2d Cir. 2010) (finding that district court did not have jurisdiction over petition to review the BIA's cancellation of petitioners' application to cancel removal); *Delgado*, 643 F.3d at 55 52 (finding that the district court did not have

Respondents' citation to Justice Thomas's concurrence in *Jennings v. Rodriguez* is similarly inapposite. Justice Thomas's concurrence in *Jennings* states that "detention is an 'action taken ... to remove' an alien. And even the narrowest reading of 'arising from' must cover claims that directly challenge such actions." 583 U.S. 281, 318 (2018). As the Second Circuit recently explained in *Ozturk v. Hyde*, however, the plurality in *Jennings* explicitly rejected Justice Thomas's interpretation because "the mere fact that a noncitizen is detained does not deprive courts of jurisdiction under § 1252(b)(9)." 136 F.4th 382, 399 (2d Cir. 2025). Instead, "'[t]he question is not whether *detention* is an action taken to remove an alien but whether the legal questions in this case arise from such an action.'" *Id.* (quoting *Jennings*, 583 U.S. at 295 n.3) (emphasis in original). Furthermore, *Regents of the University of California*, which was decided two years after *Jennings*, explained that the "arising from" language does not bar district courts from reviewing cases where the parties are not challenging removal proceedings. In sum, none of these cases demonstrate that § 1252(a)(5), when read together with § 1252(b)(9), preclude district courts from exercising jurisdiction over habeas petitions challenging unlawful detention.

In contrast, the Supreme Court has made it abundantly clear that Sections 1252(b)(9) and 1252(a)(5) do not preclude a district court's jurisdiction over habeas petitions challenging unlawful detention. In *Regents of the University of California*, the Supreme Court reiterated that the "arising from" language in § 1252(b)(9) "'does not present a jurisdictional bar' where those bringing suit 'are not asking for review of an order of removal,' 'the decision . . . to seek removal,' or 'the process by which . . . removability will be determined.'" 591 U.S. 1, 19 (2020) (quoting *Jennings*, 583 U.S. at 292–93). Here, Petitioner is not seeking review of an order of removal. As seen above, the government has not issued a final order of removal. He is also not seeking review of the process

---

jurisdiction to compel the USCIS to consider petitioner's I-212 application). These cases have no bearing on this court's jurisdiction over the instant petition.

for determining his removability. Petitioner instead challenges his detention without a bond hearing, which is an issue that can be heard without affecting Petitioner's ongoing removal proceedings. Therefore, neither § 1252(b)(9), nor § 1252(a)(5), nor a combination of the two strip this Court of jurisdiction over Petitioner's challenge to his unlawful detention.[4]

### B.  Exhaustion of Administrative Remedies

Respondents argue that because Petitioner has not moved for a bond hearing pursuant to § 1226(a), he has not exhausted his administrative remedies. Petitioner argues that any attempt to exhaust his administrative remedies would be futile because an IJ would deny his request for a bond hearing under the recent Bureau of Immigration Appeals ("BIA") decisions *Matter of Yajure Hurtado* 29 I&N Dec. 216 (BIA 2025), and *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025). Both Matter of Hurtado and Matter of Li held that IJs do not have the authority to hold a bond hearing where the moving noncitizen entered the country without inspection.[5] Because Petitioner entered the country without inspection, if he were to move for a bond hearing, an IJ following these decisions would have to decline jurisdiction over the issue.

Respondents do not cite a statute requiring Petitioner to move for a bond hearing before an IJ before seeking habeas relief. Thus, in the absence of a congressional mandate, the Seventh

---

[4] Confronted with these same arguments, district courts in this district and around the country have found that § 1252(b)(9) does not strip them of jurisdiction over habeas challenges to ongoing detention without a bond hearing. *See, e.g., Ochoa Ochoa v. Noem et al.*, No. 25-cv-10865, 2025 WL 2938779, at *4 (N.D. Ill. Oct. 16, 2025) (finding that § 1252(b)(9)  did not preclude jurisdiction over petitioner's challenge to his mandatory detention without a bond hearing under § 1225  because it does not bar "claims challenging the conditions or scope of detention of aliens in removal proceedings") (internal quotations omitted); *Giron Reyes v. Lyons*, 2025 WL 2712427 (N.D. Iowa Sept. 23, 2025) (holding that § 1252(b)(9) did not apply to habeas challenge of ongoing detention without a bond hearing); *Leal-Hernandez v. Noem*, No. 1:25-CV-02428-JRR, 2025 WL 2430025, at *6 (D. Md. Aug. 24, 2025) (rejecting government's jurisdictional arguments in habeas challenging whether Petitioner was properly subject to mandatory detention under 8 U.S.C. § 1225(b)(2)).

[5] As will be explained below, *Matter of Hurtado's* rationale is that noncitizens who entered without inspection are subject to the mandatory detention provision in § 1225, not the discretionary detention provision in § 1226(a).

Circuit maintains that "'sound judicial discretion governs'" whether litigants are required to exhaust their administrative remedies before filing a habeas petition. *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004) (quoting *McCarthy v. Madigan*, 503 U.S. 140 (1992)). *Gonzalez* held that exhaustion is inappropriate when:

> (1) requiring exhaustion of administrative remedies causes prejudice, due to unreasonable delay or an indefinite timeframe for administrative action; (2) the agency lacks the ability or competence to resolve the issue or grant the relief requested; (3) appealing through the administrative process would be futile because the agency is biased or has predetermined the issue; or (4) where substantial constitutional questions are raised.

*Id.* (quoting *Iddir v. INS*, 301 F.3d 492, 498 (7th Cir. 2002)).

In this case, requiring Petitioner to move for a bond hearing before filing this habeas petition would be futile because the agency has "predetermined" the issue. Respondents claim that Petitioner is detained under § 1225 and IJs are bound by the BIA's recent holding that they "lack authority to hear bond requests or to grant bond to aliens who are present in the United States without admission." *Matter of Yajure Hurtado*, 29 I&N Dec. 216, 225 (BIA 2025). Furthermore, Respondents have not shown that there is any reason to conceive that the BIA would change its position. Therefore, the BIA has predetermined the issue of whether an IJ has authority to hold a bond hearing in Petitioner's case. *See Gonzalez*, 355 F.3d at 1019; *see also Ochoa Ochoa*, 2025 WL 2938779, at *2 (holding that it would be futile for habeas petitioner to move for a bond hearing when the respondents' position was that petitioner was lawfully detained pursuant to § 1225); *H.G.V.U. v. Smith*, 2025 WL 2962610, at *4 (N.D. Ill. Oct. 20, 2025) ("Requiring Petitioner to exhaust his remedies by attempting to appeal the denial of bond would be futile. Indeed, if Petitioner were to appeal the decision of the Detroit Immigration Judge, Petitioner would be appealing to the very agency, the BIA, that issued *Matter of Yajure Hurtado*, which stripped the Immigration Court of its jurisdiction to set bond."). Therefore, the court uses its discretion to

9

conclude that Petitioner is not required to move for a bond hearing before challenging his detention without a bond hearing.

### C. Legality of Detention

The court now turns to the merits of the petition. Two statutes govern the detention and removal of inadmissible noncitizens from the United States: 8 U.S.C. § 1226 and § 1225. While "§ 1226 applies to aliens already present in the United States," U.S. immigration law also "authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)," a process that provides for expedited removal. *Jennings*, 583 U.S. at 303 (2018).

### i. Overview of §§ 1225 and 1226

Section 1226 governs the "usual" removal process, which involves an evidentiary hearing before an immigration judge. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). Proceedings are initiated under 8 U.S.C. § 1229(a), also known as "full removal," by filing a Notice to Appear with the Immigration Court. *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 520 (BIA 2011). Section 1226(a) provides:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States .... [T]he Attorney General—
>
> (1) may continue to detain the arrested alien; and
> (2) may release the alien on—
> (A) bond . . . ; or
> (B) conditional parole . . ..

8 U.S.C. § 1226(a). "Section 1226(a), therefore, establishes a discretionary detention framework." *Lopez Benitez v. Francis*, No. 25 Civ. 5937 (DEH), 2025 WL 2371588, at *3 (S.D.N.Y. Aug. 13, 2025) (internal citations omitted). An immigration officer makes the initial determination to either detain or release the noncitizen. After that initial decision has been made, "[f]ederal regulations

provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention."

*Jennings*, 583 U.S. at 306 (citing 8 C.F.R. § 236.1(d)(1)); *see also* 8 C.F.R. § 1236.1(c)(8), (d)(1).

At that hearing, the noncitizen "may secure his release if he can convince the officer or immigration

judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392,

397–98 (2019) (citing 8 C.F.R. §§ 1003.19(a), 1236.1(d)); *see also Hernandez v. Sessions*, 872

F.3d 976, 982 (9th Cir. 2017) ("[T]he burden is on the non-citizen to 'establish to the satisfaction

of the Immigration Judge . . . that he or she does not present a danger to persons or property, is not

a threat to the national security, and does not pose a risk of flight.'") (citing *In re Guerra*, 24 I. &

N. Dec. 37, 38 (BIA 2006)).

   While "§ 1226 applies to aliens already present in the United States," U.S. immigration law

also "authorizes the Government to detain certain aliens seeking admission into the country under

§§ 1225(b)(1) and (b)(2)," which provide for expedited removal. *Jennings*, 583 U.S. at 303 (2018).

Section 1225(b)(1) deals with "inspection of aliens arriving in the United States and certain other

aliens who have not been admitted or paroled" and provides that immigration officers shall order

certain noncitizens removed without further hearing or review unless the noncitizen indicates an

intention to apply for asylum. § 1225(b)(1)(A)(i). This applies to noncitizens who have engaged

in misrepresentation or have failed to meet document requirements under §§ 1182(a)(6)(C) or

1182(a)(7). *Id.*

   Section 1225(b)(2) pertains to "[i]nspection of other aliens." In relevant part, it provides

that "in the case of an alien who is an *applicant for admission*, if the examining immigration officer

determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be

admitted, the alien *shall be* detained for a proceeding under section 1229a of this title." 8 U.S.C. §

1225(b)(2)(A) (emphasis added). An "applicant for admission" is "[a]n alien present in the United

States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .)." 8 U.S.C. § 1225(a)(1). In other words, noncitizens subject to 1225(b)(2) are not eligible for expedited removal but are subject to mandatory detention while their removal proceedings are pending.

### ii. Analysis

Petitioner argues that he is only lawfully detainable under the discretionary detention scheme in 8 U.S.C. § 1226(a), which allows him to seek a bond hearing. Dkt. 10 at 6–8. Respondents argue that Petitioner is subject to § 1225(b)(2) because he is an "applicant for admission" who is not covered by the narrower provisions for "arriving aliens" in § 1225(b)(1). Dkt. 9 at 9. This court, as well as many other district courts, agrees with Petitioner. Respondents' interpretation of Congress's "intent" to classify noncitizens such as Petitioner as subject to mandatory detention pursuant to § 1225(b)(2) disregards the statute's plain meaning; disregards the relationship between §§ 1225 and 1226; would render the Laken Riley Act's recent amendment to § 1226(c) superfluous; and is inconsistent with decades of prior statutory interpretation and practice.

### a. Plain meaning

As seen above, § 1225(b)(2)(A) applies to noncitizens who fit three criteria: (1) "applicants for admission," (2) "if the examining immigration officer determines that an alien seeking admission," and (3) "is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). Respondents argue that this applies to Petitioner because he fits two out of three criteria. He is "an applicant for admission" under § 1225(a)(1) and he is "not clearly and beyond a doubt entitled to be admitted." Dkt. 9 at 9. Respondents do not attempt to argue that Petitioner is seeking admission, nor could they.  As many other district courts have explained, "'seeking' means

'asking for' or 'trying to acquire or gain' and implies some kind of affirmative action on the part of the applicant." *Alejandro*, 2025 WL 2896348, at \*7; *Beltran Barrera v. Tindall*, No. 3:25-cv-541-RGJ, 2025 WL 2690565, at \*4 (W.D. Ky. Sept. 19, 2025) (rejecting the respondents' interpretation of section 1225(b)(2) to cover all noncitizens who are present without being admitted because "[t]he term 'seeking' 'implies action'" and " those who have been present in the country for years are not actively 'seeking admission.'"). Petitioner is not "seeking admission." He entered the United States over 25 years ago and has lived here ever since. Prior to his arrest, he never encountered ICE or DHS agents and never filed any applications seeking admission or seeking to change his immigration status. As many courts have explained, noncitizens such as Petitioner are "seeking to remain in the United States" not seeking to be admitted. *Alejandro*, 2025 WL 2896348, at \*7 ("[Petitioner] is not actively 'seeking' 'lawful entry' because he entered the United States over 20 years ago."); *Lopez Benitez*, 2025 WL 2371588, at \*7 (explaining that "seeking admission" means that a noncitizen must be actively "seeking" "lawful entry").

The fact that Petitioner fits two out of three criteria does not suffice to show that § 1225(b)(2) applies to Petitioner. Furthermore, the fact that Petitioner plainly does not fit into the third criterion "seeking admission," adds even more support to the conclusion that § 1225(b)(2) does not apply to Petitioner.

### b. Statutory context

Respondents attempt to circumvent the plain language of the statute by arguing that § 1225(b)(1) applies only to "arriving" noncitizens and § 1225(b)(2) applies to every other "applicant for admission" under § 1225(a)(1). Dkt. 9 at 8–9. This interpretation ignores statutory context. "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dep't of*

13

*Treasury*, 489 U.S. 803 (1989); *see also King v. Burwell*, 576 U.S. 473, 486 (2015) (Our duty, after all, is "to construe statutes, not isolated provisions.") (internal quotation omitted). Considering § 1225 as a whole demonstrates that the most natural interpretation of § 1225 is that it applies to "arriving" noncitizens attempting to enter the United States. Section 1225 is titled: "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing" and it repeatedly refers to "arriving" aliens throughout. *See* 8 U.S.C. § 1225(b)(1)(A)(i) (screenings for aliens "arriving in the United States"); *id.* § 1225(b)(2)(C) (aliens "arriving on land . . . from a foreign territory contiguous to the United States" may be returned to that territory pending removal proceedings); *id.* § 1225(d)(1) (immigration officers authorized to inspect "any vessel, aircraft, railway car, or other conveyance or vehicle in which they believe aliens are being brought into the United States"). The statute further explicitly addresses "crewm[e]n" and "stowaway[s]" in § 1225(b)(2), reflecting that Congress envisions § 1225 to apply broadly to "arriving" noncitizens— not just § 1225(b)(1). In addition, its sister statute, 8 U.S.C. § 1225a, focuses on the pre-inspection of aliens entering the country at foreign airports.

Furthermore, § 1225 should be considered in relation to its companion statute § 1226. While § 1225 focuses on "inspection" of "arriving aliens," § 1226 pertains to the "[a]pprehension and detention of aliens." The plain language here suggests that § 1226 applies to aliens, such as Petitioner, who are apprehended and detained. Indeed, § 1226 sets out a "default rule" permitting "the Attorney General to issue warrants for the arrest and detention of [certain aliens already in the country] pending the outcome of their removal proceedings." *Jennings,* 583 U.S. at 281. Section 1226(a) "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings," *Id.* at 289, "and it applies when a noncitizen is 'arrested and detained' [o]n a warrant issued by the Attorney General.'" *Gomes v. Hyde,* No. 1:25-11571-JEK,

2025 WL 1869299, at *2 (D. Mass. July 7, 2025) (quoting 8 U.S.C. § 1226(a)). Thus, when considered together § 1226(a)—not § 1225—plainly applies to Petitioner because he is an alien, who was "apprehended" and "detained" after a warrant was issued for his arrest.

Respondents' attempt to contend with the relationship between § 1226 and § 1225 is not convincing. At one point, Respondents appear to argue that § 1226 does not apply to Petitioner because he is "inadmissible" rather than "removable." Dkt. 9 at 11. But, Respondents do not cite any authority for this proposition. At another point, Respondents argue that Petitioner is not subject to § 1226(a) because he is an "applicant for admission" according to *Thuraissigiam*, 591 U.S. at 118–19, which held that a noncitizen apprehended 25 yards from the border and seeking admission was not entitled to habeas relief. *Id.* But *Thuraissigiam* is legally and factually distinct from the petition. The *Thuraissigiam* court makes the distinction clear:

> While aliens who have established connections in this country have due process rights in deportation proceedings, the Court long ago held that Congress is entitled to set the conditions for an alien's lawful entry into this country and that, as a result, an alien at the threshold of initial entry cannot claim any greater rights under the Due Process Clause. Respondent attempted to enter the country illegally and was apprehended just 25 yards from the border. He therefore has no entitlement to procedural rights other than those afforded by statute.

*Id.* (internal citations omitted). In contrast to the *Thuraissigiam* petitioner, Petitioner has resided within the United States for over 25 years; he was not apprehended mere yards from the territorial border. Last, in a footnote, Respondents argue that § 1226(a) "applies to aliens within the interior of the United States who were once lawfully admitted but are now subject to removal from the United States under 8 U.S.C. § 1227(a). *Id.*, n.1. Once again, however, Respondents do not cite any authority for this proposition, nor do they attempt to reconcile it with the language or context of the statute. As seen above, however, the statutory context shows that § 1226(a)—not § 1225(b)—applies to Petitioner.

### c. No statutory surplusage

Courts construe statutes "so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009). "A basic canon of construction requires us to give meaning to every word of a statute." *Senne v. Vill. of Palatine, Ill.*, 695 F.3d 597, 605 (7th Cir. 2012). Adopting Respondents' reading would render recent congressional enactments superfluous. Congress passed the Laken Riley Act in 2025 to amend section 1226(c) and include more classes of aliens who are ineligible for bond under § 1226(a). Laken Riley Act, Pub. L. No. 119-1, sec. 236, § 2, 139 Stat. 3, 3 (2025). One of those new classes of non-bondable aliens are aliens not admitted into the United States who were charged with specific crimes. 8 U.S.C. § 1226(c)(1)(E) (citing *id.* § 1182(a)(6)(A)). Under the Respondents' expansive interpretation of § 1225, the amendment would have no purpose. Section 1225(b)(2) would already provide for mandatory detention of every unadmitted alien, regardless of whether the alien falls within one of the new classes of non-bondable aliens established by the Laken Riley Act. This absurd result is one of the reasons why district courts have rejected Respondents' interpretation. *See, e.g.*, *Beltran Barrera*, 2025 WL 2690565, at *4 (noting that the Laken Riley Act makes respondents' interpretation of § 1225(b)(2) implausible because "[w]hen Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect.") (quoting *Stone v. I.N.S.*, 514 U.S. 386, 397 (1995)); *Lopez-Campos*, 2025 WL 2496379 at *8 (explaining that if "Congress had intended for Section 1225 to govern all noncitizens present in the country, who had not been admitted, then it would not have recently adopted an amendment to Section 1226 that prescribes a subset of noncitizens be exempt from the discretionary bond framework.").

Respondents do not address the Laken Riley Act, nor do they demonstrate how their reading would not render § 1226(c) superfluous.

### d.  Prior usage and interpretation

Respondents' argument that only § 1225(b)(1)—and not the entirety of § 1225—applies to "arriving aliens" fails when considering the statute's prior usage and interpretation. For example, 8 C.F.R. § 235.3(c)(1) notes that "[e]xcept as otherwise provided in this chapter, any arriving alien who appears to the inspecting officer to be inadmissible, and who is placed in removal proceedings pursuant to section [1229a] shall be detained in accordance with section [1225(b)]."

Furthermore, the government previously applied section 1226(a) to noncitizens, such as Petitioner, who entered the country without admission. *See Matter of Hurtado*, 29 I&N Dec. 216 n.6. ("We acknowledge that for years Immigration Judges have conducted [section 1226(a)] bond hearings for aliens who entered the United States without inspection."); *Martinez*, 2025 WL 2084238, at *6. Indeed, the record shows that Petitioner was detained pursuant to § 1226 rather than § 1225. Respondents arrested Petitioner and then issued a warrant for his arrest. Section 1226(a) "authorizes detention *only* '[o]n a warrant issued' by the Attorney General," *Jennings*, 583 U.S. at 302, and § 1225(b) contains no warrant requirement, *see* 8 U.S.C. § 1225(b). Furthermore, Respondents issued Petitioner a Notice to Appear, charging him as an "alien present in the United States without being admitted or paroled." Dkt. 9-2 at 2. The "arriving alien" box was left unmarked. *Id.* Thus, Respondents do not consider Petitioner to be an "arriving alien."

While interpreting the meaning of a statute belongs to the "independent judgment" of the courts, "'the longstanding practice of the government'—like any other interpretive aid—'can inform [a court's] determination of what the law is.'" *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385-86 (2024) (quoting *NLRB v. Noel Canning*, 573 U.S. 513, 525 (2014)). The court finds

that the government's longstanding practice, under which § 1225(b)(2)(A) would not have applied to Petitioner's circumstances, is consistent with the text and statutory scheme. *See, e.g.*, *Lopez Benitez*, 2025 WL 2371588, at *8 (reaching same conclusion); *Alejandro*, 2025 WL 2896348, at *8; (reaching same conclusion); *Campos Leon,* 2025 WL 2694763, at *4 (reaching same conclusion)*.* Furthermore, ICE's own application of this practice to Petitioner provides a strong basis for finding that he may only be detained pursuant to § 1226(a).

### D. Due Process

The court has determined that it has jurisdiction over Petitioner's petition for writ of habeas corpus and that his detention is governed by § 1226(a) instead of § 1225(b)(2). The court now turns to whether Petitioner's detention under § 1226(a) without a bond hearing violates his due process rights. Respondents do not respond to this issue on the merits, nor do they claim that Petitioner received due process. Rather they argue that Petitioner's detention is "reasonable" because he has not been detained for longer than six months. Dkt. 9 at 13 In this way, under *Zadvydas v. Davis*, 533 U.S. 678, 701 (2011) and *Demore v. Kim*, 538 U.S. 510, 528 (2003), Petitioner's detention is presumably not indefinite. *Id.* Petitioner correctly replies that Respondents seek support in cases pertaining to post-removal detention. As mentioned above, Respondents only initiated removal proceedings in October of 2025 and no final order of removal has been issued. Petitioner is not in "post-removal" detention.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment*." Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690.

To determine whether a civil detention violates a detainee's due process rights, courts apply the three-part balancing test set forth in *Matthews*. The court must weigh: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the United States' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. 424 U.S. at 335.

Applying this analysis, Petitioner's detention without a bond hearing violates procedural due process. Petitioner has a cognizable private interest in being freed from unlawful detention without any opportunity for a bond hearing. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (explaining that one of the "most elemental of liberty interests" is to be free from detention). There is a severe risk of erroneous deprivation because a hearing would require the IJ to make an individualized determination evaluating dangerousness and flight risk. Given that an IJ has not made this determination, Petitioner's current detention might well be erroneous. Last, the government's interest is slight insofar as an IJ has *not* determined that Petitioner poses a flight risk or a danger to the community. Petitioner merely asks that the government hold a hearing to make this determination. As other courts have concluded in cases involving similar factual circumstances, Petitioner's detention without a bond hearing amounts to a due process violation. *See, e.g.*, *Ochoa Ochoa*, 2025 WL 2938779, at *4 (finding detention under § 1225(b)(2) without a bond hearing to violate petitioner's due process rights); *Lopez Benitez*, 2025 WL 2371588, at *13; *Doe v. Moniz*, No. 1:25-cv-12094-IT, 2025 WL 2576819, at *11 (D. Mass. Sept. 5, 2025) ("In sum, the *Mathews* factors weigh in favor of Petitioner, and the court finds that his detention without a bond hearing violates his Due Process rights.").

### III.    Scope of Relief

Petitioner requests immediate release from custody or, in the alternative, an individualized bond hearing where the government bears the burden of proof by clear and convincing evidence. Dkt. 11 at 12. Immediate release is the customary remedy in habeas proceedings. *See Thursaissigiam*, 591 U.S. at 107 ("Habeas has traditionally been a means to secure release from unlawful detention."); *Munaf v. Geren*, 553 U.S. 674, 698 (2008) (explaining that "the quintessential habeas remedy" is release from custody). However, the court finds that ordering an individualized bond hearing is appropriate here because detention under § 1226(a) is discretionary and the due process violation arises from Petitioner's detention without a bond hearing. Even still, the court does not have authority to expand the procedural protections of § 1226(a) and will thus not shift the burden of proof. *See, e.g., Ali v. Achim*, 342 F. Supp. 2d 769, 775 (N.D. Ill. 2004) (declining to grant petitioner's request for periodic review and a shift of the burden of proof because the bond determination procedures in § 1226(a) and 8 C.F.R. § 1003.1(e)(8)(i) "already provide for the safeguard of individual bail determinations" and "do not violate Petitioner's procedural due process under the Mathews due process calculus").

### IV.    Conclusion

For the above reasons, Petitioner's petition for writ of habeas corpus is granted. Respondents' detention of Petitioner without an individualized bond hearing violates the Fifth and Fourteenth Amendments of the Constitution.

Within **seven days** of this order, Respondents must either: (1) provide Petitioner with an individualized bond hearing before an IJ pursuant to 8 U.S.C. § 1226(a); or (2) release Petitioner from custody, under reasonable conditions of supervision. Respondents must document that they have provided Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) or that they have

released Petitioner. Respondents must file notice with the court within **four days** of either action.

The **clerk is directed** to enter final judgment.

      **SO ORDERED.**

Date: 11/18/2025

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Erin C Cobb
Kriezelman Burton & Associates, LLC
ecobb@krilaw.com

Liberty L. Roberts
CHURCH CHURCH HITTLE & ANTRIM (Noblesville)
lroberts@cchalaw.com

Shelese M. Woods
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
shelese.woods@usdoj.gov